STATE OF SOUTH CAROLINA   )
                                   )
COUNTY   OF   YORK   )

IN THE COURT OF COMMON PLEAS

08-CP46-2755

**SUMMONS**
Non-Jury

Mountaineer Investments, L.L.C.,   )
                                   )
                    Plaintiff,   )
                                   )
         -vs-           )
                                   )
The Vanguard Group, Inc., d/b/a Vanguard   )
Participant Services,   )
                                   )
                   Defendant.   )

TO:   THE DEFENDANT ABOVE-NAMED:

       YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you, and to serve a copy of your answer on the subscribers at their offices, 1122 Lady Street, 5th Floor, Post Office Box 394, Columbia, SC 29202, within thirty (30) days after the service hereof, exclusive of the day of service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff will apply to the Court for judgment by default for the relief demanded in the Complaint.

                                              Leonard R. Jordan, Jr.
                                            BERRY, QUACKENBUSH & STUART, P.A.
                                            Post Office Box 394
                                            Columbia, South Carolina 29202
                                            Telephone: (803) 779-2650
                                            ATTORNEY FOR THE PLAINTIFF

Columbia, South Carolina
July _14_, 2008

U:\Stephanie\Cadle\Cadle 462.0 74 Hoffer CK\02091\Summons & Complaint.frm

STATE OF SOUTH CAROLINA )
)     IN THE COURT OF COMMON PLEAS
COUNTY   OF   YORK )

Mountaineer Investments, L.L.C., )
)
              Plaintiff, )        **COMPLAINT**
)          Non-Jury
        -vs- )
)
The Vanguard Group, Inc., d/b/a Vanguard )
Participant Services, )
)
           Defendant. )

$08 \cdot CP46 \cdot 2755$

The Plaintiff, complaining of the Defendant, would show as follows:

1.     That the Plaintiff is a limited liability company organized under the laws of one of the states of the United States and doing business in the State of South Carolina.

2.     That the Defendant, upon information and belief, is a corporation organized and existing in the State of Pennsylvania and doing business throughout the United States.

3.     That on or about October 28, 1989, Rock Hill Bank & Trust issued a line of credit loan to Donald L. Hofer

4.     That said loan was made, and was intended to be performed, in York County, South Carolina.

5.     That on or about October 28, 1999, the Defendant acknowledged and agreed to participate in the said loan from Rock Hill Bank & Trust to Donald L. Hofer by providing a security interest in a savings plan to secure, in whole or in part, such loan.

6.     That the security interest provided for the benefit of Rock Hill Bank & Trust was an account known as Vanguard Savings Plan Account #092382 (the "collateral").

7.     That a copy of the subject security agreement is attached hereto as Exhibit "A" and made a part hereof.

8.     That the collateral was intended to secure said loan, plus all extensions, renewals, modifications and substitutions thereof.

9. That the said loan to Donald L. Hofer was renewed by Rock Hill Bank & Trust on September 25, 2001.

10. That the said loan was assigned to the Plaintiff on or before December 21, 2004.

11. That the Plaintiff declared the entire balance of the loan to be due and payable, and it demanded payment of such, but the borrower, Donald L. Hofer, failed and refused to pay same.

12. That the Plaintiff then instituted suit in this Court against Donald L. Hofer to collect the loan balance (Case No. 04-CP-46-3304), and it obtained an Order of Judgment filed in the Office of the Clerk of Court for York County on February 29, 2008.

13. That said judgment, awarded against Donald L. Hofer, established a debt amount of $333,958.93, with interest thereon from August 25, 2004, at the rate of 8.500% per annum.

14. That upon information and belief, the Defendant is in possession of Vanguard Savings Account #0923 l 2, which possession is sought by the Plaintiff in this action.

15. That demand has been made upon the Defendant to turn-over the collateral, but said demand has been refused; and the Plaintiff is entitled to recover possession of the collateral pursuant to the terms of the aforesaid security agreement.

16. That the Plaintiff is informed and believes that it is entitled to the benefit of the collateral together with an accounting satisfactory to the Plaintiff demonstrating that the collateral has not been allowed by the Defendant to diminish in value in violation of the security agreement.

17. That the Plaintiff is further informed and believes that, should the Defendant fail to turn-over the said collateral and satisfactory accounting, it is entitled to a money judgment against the Defendant in an amount up to its aforesaid judgment debt against Donald L. Hofer.

WHEREFORE, the Plaintiff prays:

1. For judgment against the Defendant, The Vanguard Group, Inc., d/b/a Vanguard Participant Services, awarding it possession of the collateral hereinabove described from the Defendant, together with an

accounting satisfactory to the Plaintiff demonstrating that the collateral has not been allowed by the Defendant to diminish in value in violation of the security agreement.

2. In the event possession and satisfactory accounting cannot be had, for a money judgment against the Defendant in an amount up to its aforesaid judgment debt against Donald L. Hofer.

3. For such other and further relief as the Court may find just and proper.

_____
Leonard R. Jordan, Jr.
BERRY, QUACKENBUSH & STUART, P.A.
Post Office Box 394
Columbia, South Carolina 29202
Telephone: (803) 779-2650
ATTORNEY FOR THE PLAINTIFF

Columbia, South Carolina
July 14, 2008

U:\Stephanie\Cadle\Cadle OV 74 Hofer OXO2004\Summons & Complaint.frm

| DONALD L. HOPER<br>129-131 HAMPTON STREET<br>ROCK HILL, SC 29730 | ROCK HILL BANK & TRUST<br>315 EAST MAIN STREET<br>ROCK HILL, SC 29730 | Loan Number __R-2193__<br>Date __SEPTEMBER 25, 2001__<br>Maturity Date __DEC. 25, 2001__<br>Loan Amount $ __285,000.00__<br>Renewed Of __ |
| BORROWER'S NAME AND ADDRESS<br>"I" includes each borrower above, jointly and severally. | LENDER'S NAME AND ADDRESS<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of __TWO HUNDRED EIGHTY FIVE THOUSAND AND NO/100*__ * * * * * * * * * * * * * * * * * Dollars $ __285,000.00__

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On __SEP. 25, 2001__ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are __UPON CUSTOMER REQUEST AND LOAN OFFICER APPROVAL__

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum principal sum more than one time. This feature is subject to all other conditions and expires on _____.

☒ **Closed End Credit:** You and I agree that I may borrow (subject to all other conditions) up to the maximum principal sum only one time.

**INTEREST:** I agree to pay interest on the outstanding principal balance from __SEPTEMBER 25, 2001__ at the rate of __8.500__ % per year until __DECEMBER 25, 2001__

☐ **Variable Rate:** This rate may change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be solely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____. A change in the interest rate will take effect _____.

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a __ACTUAL/360__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____.

☐ **LATE CHARGE:** If a payment is not made within _____ days after it is due, I agree to pay a late charge of _____.

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: __LOAN ADMIN & LOAN ORGINATION__

**PAYMENTS:** I agree to pay this note as follows:

☒ **Interest:** I agree to pay accrued interest __ON DEMAND, BUT IF NO DEMAND IS MADE THEN ON THE 25TH DAY OF EACH MONTH BEGINNING OCTOBER 25, 2001__

☒ **Principal:** I agree to pay the principal __ON DEMAND, BUT IF NO DEMAND IS MADE THEN ON DECEMBER 25, 2001__

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____ and will be due _____. A payment of $ _____ will be due _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____.

**PURPOSE:** The purpose of this loan is __BUSINESS: INCREASE & RENEW__

**SECURITY:** You have certain rights that may affect my property as described on page 2. In addition to those rights, this agreement is separately secured by a ☒ preexisting ☐ contemporaneous agreement described as __ASSIGNMENT OF ACCOUNT__

**ADDITIONAL TERMS:**
THIS NOTE IS SECURED BY AN ASSIGNMENT OF VANGUARD ACCOUNT

**SECURITY INTEREST:** I give you a security interest in all ... Property described below that I own or have sufficient rights ... right to transfer an interest, now or in the future, wherever the Property is ... will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any related evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services ...

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule I give to you, but such a list is not necessary to create a valid security interest in all of my equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use my name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following:

_____

If applicable, enter real estate details or person and record owner information: _____

_____
_____

The Property will be used for a ☐ personal ☐ business ☐ agricultural ☐ _____ purposes.

Borrower/Owner State of organization (if applicable) _____

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**GENERALLY** - This agreement secures this note and any other debt I have with you, now or later. However, it will not secure other debts if you fail with respect to such other debts: to make any required disclosures about this security agreement or if you fail to give any required notice of the right of rescission. If property described in this agreement is located in another state, the agreement may also, in some circumstances, be governed by the law of the state in which the Property is located.

**NAME AND LOCATION** - My name indicated on page 1 is my exact legal name. If I am an individual, my address is my principal residence. If I am not an individual, my address is the location of my chief executive offices or sole place of business. If I am an entity organized and registered under state law, I have indicated my state of organization on page 1. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the Property, or to the extent this is a purchase money security interest I will acquire ownership of the Property with the proceeds of the loan. I will defend it against any other claim. Your claim to the Property is ahead of the claims of any other creditor. I agree to do whatever is required to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the Property.

I will keep the Property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

I will keep the Property in my ... state listed on page 1 of this agreement, unless we agree I may keep it at another location. If the Property is to be used in another state, I will give you a list of those states. I will not try to sell the Property unless it is inventory or I receive your written permission to do so. If I sell the Property I will have the permit made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent: (1) a beneficial interest in the debtor is sold or transferred, or (2) there is a change in either the identity or number of members of a partnership, or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the Property as they become due. You have the right of reasonable access in order to inspect the Property. I will immediately inform you of any loss or damage to the Property.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan, and (b) payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**PAYMENTS BY LENDER** - You are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat these payments as advances and add them to the unpaid principal under the note secured by this agreement or you may demand immediate payment of the amount advanced.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the Property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the Property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items received by myself, I will do so. You may exercise my rights with respect to obligations of any account debtors, or other persons obligated on the Property, to pay or perform, and you may enforce any security interest that secures such obligations.

Any person who signs within this box does so to give you a security interest in the Property described on this page. That person does not promise to pay the note. "I" as used in this security agreement will include the borrower and any person who signs within this box.

Signed _____    Date _____

©1994, 1991 Bankers Systems, Inc., St. Cloud ... and LAZ-SC 2/6/2001 ... page 3 of 3)

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** — As used on pages 1 and 2, "**⊞**" makes the terms that apply to use loan. "I," "me" or "my" means each borrower who signs the note and each other person or legal entity including guarantors, endorsers, and sureties who agrees to pay this note together referred to as "we"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** — The law of the state of South Carolina in which you are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**PAYMENTS** — Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on the note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payments until the note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST** — Interest accrues on the principal balance owing) from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal sum outstanding at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to in this note (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE** — The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting this index, or the margin, that the interest rate on this note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.

**POST MATURITY RATE** — For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS** — If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph on page 2.

**MULTIPLE ADVANCE LOANS** — If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**SET-OFF** — I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of the note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE INCLUDING THOSE ON PAGES 1 AND 2). I have received a copy of today's date.**

DONALD L. HOPER

SIGNATURE FOR LENDER:

C. ROBERT HERRON

**If** this agreement covers inventory, I will no ... less of it except in any ordinary course of business...

**If** this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of this agreement, with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**If** this agreement covers chattel paper or instruments, either as original collateral or proceeds of the Property, I will note your interest on the face of the chattel paper or instruments.

**REMEDIES** — I will be in default on the security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first to your expenses and then to the debt. I agree that 10 days written notice sent to my last known address by first class mail will be reasonable notice under the Uniform Commercial Code. My current address is on page 1.

**PERFECTION OF SECURITY INTEREST** — I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining possession or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code.

**If** any right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to an interest in the obligation that is only after bankrupt I could withdraw or any sole deposit or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only in a representative. It also does not apply to any individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against my account. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**SECURITY** — References to agreements covering this loan on page 1 shall not be considered an exclusive list of such agreement. Other agreements you and I have executed or execute in the future which are not referenced on page 1 may secure this loan.

**DEFAULT** — I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the Property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe them through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** — If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued unpaid amounts).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
(6) You may make use of any remedy given to you in any agreement securing this note.

By selecting any one or more of these remedies you do not give up your right to use later any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider later the event a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES** — I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER** — I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT** — I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**FINANCIAL INFORMATION** — I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you as is or will be accurate, current and complete.

**WAIVER OF HEARING PRIOR TO IMMEDIATE POSSESSION:** If this box is for a business purpose I agree to waive the right to five days' notice and a prejudicial hearing prior to seizure of any personal property which may secure this transaction.

| DONALD L. HOFER<br>129-131 HAMPTON STREET<br>ROCK HILL, SC 29730 | ROCK HILL BANK & TRUST<br>315 EAST MAIN STREET<br>ROCK HILL, SC 29730 | Line of Credit No. _____<br>Date ___SEPTEMBER 25, 2001___<br>Max. Credit Amt. __$285,000.00__<br>Loan Ref. No. _____ |
|---|---|---|
| BORROWER'S NAME AND ADDRESS<br>"I" includes each borrower above, jointly and severally. | LENDER'S NAME AND ADDRESS<br>"You" means the lender, its successors and assigns. | |

You have extended to me a line of credit in the
AMOUNT of __TWO HUNDRED EIGHTY FIVE THOUSAND AND NO/100__ $ ___285,000.00__

You will make loans to me from time to time until __5:00__ P.m. on __DECEMBER 25, 2001__ . Although the line of credit expires on that date, I will remain obligated to perform all my duties under this agreement so long as I owe you any money advanced according to the terms of this agreement, as evidenced by any note or notes I have signed promising to repay these amounts.

This line of credit is an agreement between you and me. It is not intended that any third party receive any benefit from this agreement, whether by direct payment, reliance for future payment or in any other manner. This agreement is not a letter of credit.

**1. AMOUNT:** This line of credit is:

☒ **OBLIGATORY:** You may not refuse to make a loan to me under this line of credit unless one of the following occurs:
  a. I have borrowed the maximum amount available to me;
  b. This line of credit has expired;
  c. I have defaulted on the note (or notes) which show my indebtedness under this line of credit;
  d. I have violated any term of this line of credit or any note or other agreement entered into in connection with this line of credit;

  e. __UPON CUSTOMER REQUEST AND LOAN OFFICER APPROVAL__

☐ **DISCRETIONARY:** You may refuse to make a loan to me under this line of credit once the aggregate outstanding advances equal or exceed
  $ _____

Subject to the obligatory or discretionary limitations above, this line of credit is:
  ☐ **OPEN-END** (Business or Agricultural only): I may borrow up to the maximum amount of principal more than one time.
  ☒ **CLOSED-END:** I may borrow up to the maximum only one time.

**2. PROMISSORY NOTE:** I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on __SEPTEMBER 25, 2001__ , or any note(s) I sign at a later date which represent advances under this agreement. The note(s) set(s) out the terms relating to maturity, interest rate, repayments and advances. If indicated on the promissory note, the advances will be made as follows:
__UPON CUSTOMER REQUEST AND LOAN OFFICER APPROVAL__

**3. RELATED DOCUMENTS:** I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with this line of credit:
  ☒ security agreement dated __SEPTEMBER 25, 2001__      ☐ _____
  ☐ mortgage dated _____      ☐ _____
  ☐ guaranty dated _____

**4. REMEDIES:** If I am in default on the note(s) you may:
  a. take any action as provided in the related documents;
  b. without notice to me, terminate this line of credit.
  By selecting any of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I default, you do not waive your right to later consider the event a default if it happens again.

**5. COSTS AND FEES:** If you hire an attorney to enforce this agreement I will pay your reasonable attorney's fees, where permitted by law. I will also pay your court costs and costs of collection, where permitted by law.

**6. COVENANTS:** For as long as this line of credit is in effect or I owe you money for advances made in accordance with this line of credit, I will do the following:
  a. maintain books and records of my operations relating to the need for this line of credit;
  b. permit you or any of your representatives to inspect and/or copy these records;
  c. provide to you any documentation requested by you which support the reason for making any advance under this line of credit;
  d. permit you to make any advances payable to the seller (or seller and me) of any items being purchased with that advance;

  e. _____

**7. NOTICES:** All notices or other correspondence with me should be sent to my address stated above. The notice or correspondence shall be effective when deposited in the mail, first class, or delivered to me in person.

**8. MISCELLANEOUS:** This line of credit may not be changed except by a written agreement signed by you and me. The law of the state in which you are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation.

SIGNATURES: I AGREE TO THE TERMS OF THIS LINE OF CREDIT. I
HAVE RECEIVED A COPY ON TODAY'S DATE.

FOR THE LENDER

C ROBERT HERRON _____  X _____
                                    DONALD L. HOFER
Title PRESIDENT & CEO

©1995 BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM LCA 3/2/91      (page 1 of 1)

8

DONALD L. HOFER
1643 WEDGEFIELD DRIVE
ROCK HILL, SC 29730

Account holder's name and address: "I" means the account holder named above. If there is more than one, "I" means all account holders jointly and each account holder separately.

ROCK HILL BANK & TRUST
315 EAST MAIN STREET
ROCK HILL, SC 29730

Secured party's name and address: "You" means the secured party named above, your successors and assigns.

Date: OCTOBER 28, 1999

Assignment of deposit or share account: For value received, I assign and transfer to you, and I give you a security interest in the following accounts: VANGUARD SAVINGS PLAN
ACCOUNT# 092382

and any renewals or substitutions. These accounts will be referred to as the collateral in the rest of this agreement. The collateral is held with: VANGUARD

which will be referred to as the depository in the rest of this agreement. The collateral includes all funds now in the accounts listed plus all additions of any kind and from any source, made at any time before the release of this agreement in writing.

Secured debt(s): This agreement is made to secure the payment of:

☐ all present and future debts, of every kind and description which

may now or hereafter owe to you, no matter how or when these debts arise. (We expand this paragraph to be very broad. For example, "debts" include loans or credit purchases, made by or transferred to you, as well as debts arising from any other relationship such as check overdrafts, forgeries, or returned deposits. These also include debts arising from any capacity (maker, co-maker, endorser, surety, guarantor.) If more than one person or entity is listed, then all joint and separate debts of all those listed are secured.

☒ the following described debt(s), plus all extensions, renewals, modifications and substitutions: $130,000 LINE OF
CREDIT WITH ROCK HILL BANK & TRUST

Additional terms: The following terms are also part of this agreement:
(1) This agreement will last until you release it in writing, and you are not required to release it until the secured debts are paid in full.
(2) While this agreement is in effect, neither I nor anyone else (except you, the secured party) can withdraw all or any part of the collateral.
(3) No joint owner, beneficiary, surviving spouse or representative of any estate gets any rights to the collateral in the event of my death or incapacity until the secured debts are paid in full.
(4) You have the right to withdraw all or any part of the collateral and apply the withdrawal toward the payment of the secured debts, even if the withdrawal causes a penalty. If a secured debt is in default, you can exercise this right without any action to do or my consent (unless such notice or consent is required by law and cannot be waived). You have the right to sign my name for sign your name as my attorney in fact) to exercise the rights given to you in this agreement.
(5) I represent and promise that no other person or entity has any rights in the collateral that have priority over those I am giving you here and that no part of the collateral is exempt or protected by law from this agreement.
(6) The rights and remedies I am giving you here are in addition to any stated in any other agreement. If there is more than one debt secured, there are more than one type of collateral (including collateral outside of this agreement) or more than one other secured party, it is entirely in your discretion as to the order and method of remedies you select.
(7) I neither assume nor am excused from personal liability for any of the secured debts merely by making this agreement my personal liability will be determined by referring to other documents. I do assume personal liability for the warranties and representations made in this agreement.
(8) A debt secured by this agreement (whether specifically listed or not) includes all sums that could possibly be due under the debt.
(9) I specifically request and direct the depository to honor and accept this agreement and its terms.

Signature(s) of account holder(s): By signing here we accept the terms of this agreement and acknowledge receipt of a copy

X _____
DONALD L. HOFER

Notice to depository:
Date: OCTOBER 28, 1999
To:

☒ This confirms our oral notice dated.

Please take notice of this agreement. Please confirm your receipt of this notice and your acceptance of its terms by completing the acknowledgement portion and returning a copy to the secured party.

By: _____

For the secured party

Acknowledgement by depository:
Date: OCTOBER 28, 1999
To: Vanguard Retirement Services

We have received your notice of this agreement. We agree that no account holder or any other person (other than you, the secured party) has any right to make any withdrawals from the collateral until this agreement is released in writing by you.

By: _____

For the depository
11/1/99

Release by secured party:
Date:
To:

This is to advise you that the assignment and security interest in the collateral described above has been released and the original certificate, or passbook or other evidence of the collateral (if any) has been returned to the account holder(s).

By: _____

For the secured party

© 1999 BANKERS SYSTEMS, INC., ST CLOUD MN 56302   (1-800-397-2341)   FORM bn-169   9/17/99

(page 1 of 1)

## ALLONGE

### Donald L. Hofer $285,000.00 Note

This Allonge is to be attached to that certain promissory note dated September 25, 2001, of Donald L. Hofer to Rock Hill Bank & Trust in the original principal amount of $285,000.00.

Pay to he order of Mountaineer Investments, L.L.C., an Ohio limited liability company, 100 North Center Street, Newton Falls, Ohio 44444.

WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND OR NATURE WHATSOEVER EXCEPT AS PROVIDED IN THAT CERTAIN LOAN PURCHASE AGREEMENT DATED OF EVEN DATE BY AND BETWEEN MOUNTAINEER INVESTMENTS, L.L.C. AND CAROLINA FIRST BANK.

Dated: December 21, 2004

> Carolina First Bank,
> purchaser of the foregoing note from
> Rock Hill Bank & Trust
>
> By: _____
> David A. Frances
> Its: Senior Vice President

STATE OF SOUTH CAROLINA    ]
                           ]          VERIFICATION
COUNTY OF YORK             ]


PERSONALLY appeared before me John Martin Foster, who, being duly sworn, deposes and says that he is the attorney for the Plaintiff in the foregoing action; that this action is based upon the Statements and regularly-kept business records of the Plaintiff; that such Statements and records are in his possession; that on knowledge and information the allegations of the Complaint are true; that the grounds of his knowledge and information the Statements and records and communications from the Plaintiff's agents; and that this verification is not made by the Plaintiff's Officers due to their absence from this state.


_____
John Martin Foster


SWORN TO and subscribed before me
this ___ day of December, 2004.

_____
NOTARY PUBLIC FOR SOUTH CAROLINA
My Commission expires: _8/17/06_


3

Served in person by: Gianine Kopishky
Breslin Spec. Ser
Received by: _____

Date: 7-22-08  Time: 1137 Am